UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BENITO BERRIOS,                        :
          Plaintiff,                   :
                                       :
     v.                                :     CA 05-493 M
                                       :
MICHAEL J. ASTRUE,[1]                  :
COMMISSIONER,                          :
SOCIAL SECURITY ADMINISTRATION,        :
          Defendant.                   :

## MEMORANDUM AND ORDER

     This matter is before the Court on a request for judicial
review of the decision of the Commissioner of Social Security
("the Commissioner"), denying Supplemental Security Income
("SSI") benefits, under §§ 205(g) and 1631(c)(3) of the Social
Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3)
("the Act").  Plaintiff Benito Berrios ("Plaintiff") has filed a
motion for summary judgment.  Defendant Michael J. Astrue
("Defendant") has filed a motion for an order affirming the
decision of the Commissioner.

     With the parties' consent, this case has been referred to a
magistrate judge for all further proceedings and the entry of
judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ.
P. 73.  For the reasons set forth herein, I order that
Defendant's Motion for an Order Affirming the Decision of the

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J.
Astrue is hereby substituted for Jo Anne B. Barnhart as Defendant in
this action.  See Fed. R. Civ. P. 25(d)(1) ("When a public officer is
a party to an action in his official capacity and during its pendency
dies, resigns, or otherwise ceases to hold office, the action does not
abate and the officer's successor is automatically substituted as a
party.  Proceedings following the substitution shall be in the name of
the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action
instituted in accordance with this subsection shall survive
notwithstanding any change in the person occupying the office of
Commissioner of Social Security or any vacancy in such office.").

Commissioner (Document ("Doc.") #11) ("Motion to Affirm") be granted and that Plaintiff's Motion for Summary Judgment (Doc. #10) be denied.

## Background

Plaintiff was born in 1955. (Record ("R.") at 78) He has a ninth grade education and no vocationally relevant past work experience. (R. at 17)

## Procedural History

Plaintiff filed an application for SSI on January 10, 2003, alleging disability since that date as a result of depression, anxiety, and an affective disorder.[2] (R. at 17-18, 78, 87) The application was denied initially and on reconsideration. (R. at 27, 32) Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"), (R. at 35), and on September 2, 2004, Plaintiff appeared before ALJ Joel Gardiner in Boston, Massachusetts, (R. at 298-300). At that time Plaintiff requested that his case be transferred to Rhode Island. (R at 300-02) The matter was subsequently transferred, and on May 9, 2005, ALJ Barbara F. Gibbs conducted a hearing in Providence, Rhode Island, at which Plaintiff, represented by counsel, appeared and testified, as did a vocational expert ("VE"), Albert Sabella. (R. at 304-46)

On August 17, 2005, ALJ Gibbs issued a decision in which she found that Plaintiff was not disabled. (R. at 17-24) Review of the ALJ's decision by the Appeals Council was requested, (R. at 13), and was denied on September 23, 2005, (R. at 9), thereby rendering the ALJ's decision the final decision of the Commissioner.

A Complaint (Doc. #1) was filed in this Court on November

---

[2] The alleged onset date was amended by Plaintiff's counsel at the second administrative hearing. (R. at 344-46)

28, 2005.  Defendant on February 16, 2006, filed his Answer (Doc. #3).  On August 28, 2006, the Motion for Summary Judgment (Doc. #10) was filed, followed on September 28, 2006, by the Motion to Affirm (Doc. #11).

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[3] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)))(second alteration in original).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st

---

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d at 222 (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

### Law

An individual is considered disabled under the Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 1382c(a)(3)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4]  20 C.F.R. § 416.921(a) (2007).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

---

[4] Section 416.921 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b) (2007).  Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

4

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 416.920(a) (2007); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether the claimant is able to perform his past relevant work; and (5) whether the claimant remains capable of performing any work within the economy.  See 20 C.F.R. § 416.920(b)-(g).  The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 5.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**The ALJ's Decision**

Following the familiar sequential evaluation, the ALJ in the instant case found: that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, (R. at 18, 23); that Plaintiff's anxiety and depression were severe impairments but not severe enough to equal, either singularly or in combination, a listed impairment, (id.); that Plaintiff had no past relevant work, (R. at 17, 22, 24); that Plaintiff retained the residual functional capacity ("RFC") "to perform work at all exertional levels with a need for [] unskilled, routine and repetitive work involving primarily things, rather than people, in a small-group work environment in which there are no more than

5

ten people in [Plaintiff's] immediate vicinity, no production lines, and no reading requirements," (R. at 24); and that, considering his age, education, and work experience and the types of work that he was still functionally capable of performing, Plaintiff could be expected to make a vocational adjustment to work that existed in significant numbers in the national economy, such as unskilled, light work as a machine operator, production assembler, and cleaner, (R. at 24). Based on these findings, the ALJ determined that Plaintiff was not under a disability as defined by the Act. (R. at 23, 24) In reaching this conclusion, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible. (R. at 23) The ALJ also noted that, while Plaintiff was an individual closely approaching advanced age, during the period January 10, 2003, through May 5, 2005, he was a younger individual between the ages of forty-five and forty-nine with a limited education. (R. at 17, 24)

## Errors Claimed

Plaintiff alleges that: 1) the ALJ erred in failing to find that Plaintiff met Listing 12.05(C), Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 8; and 2) the ALJ's finding that Plaintiff was capable of unskilled, routine, and repetitive work was not based on substantial evidence, id. at 11.

## Discussion

**I.  The ALJ's determination that Plaintiff's impairments did not meet Listing 12.05(C) is supported by substantial evidence.**

Plaintiff contends that the ALJ erred at step three of the sequential evaluation process by finding that his impairments did not meet or equal the severity requirements of any impairment contained in Appendix 1, Subpart P of Regulation No. 4 (the "Listings"). See Plaintiff's Mem. at 8-11. Specifically, Plaintiff claims that the evidence demonstrated that his mental

6

impairments met Section 12.05(C) of the Listings concerning mental retardation.  See id.

The Court notes initially that, although Plaintiff was represented by the same counsel who represents him in this action, Plaintiff did not raise this issue before the ALJ.  At no time during the hearing did Plaintiff's counsel argue that Plaintiff met the elements of Listing 12.05(C).  Given that this was an issue on which Plaintiff bore the burden of proof, the Court views unfavorably the fact that Plaintiff remained silent about such a basic issue as whether Plaintiff met the requirements of a particular listing.  Accordingly, the Court finds that Plaintiff has waived this claim of error.[5]  See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001)(affirming district court's finding that plaintiff waived claim by making no mention of it to ALJ or Appeals Council); see also Sims v. Apfel, 530 U.S. 103, 112, 120 S.Ct. 2080, 2086 (2000)(O'Connor, J., concurring in part)("In most cases, an issue not presented to an administrative decision maker cannot be argued for the first time in federal court."); Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 15, 120 S.Ct. 1084, 1094 (1999)(stating that "§ 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court.").

Even if the Court were to overlook Plaintiff's waiver and consider this claim, the ALJ's determination that Plaintiff did not satisfy the requirements of Listing 12.05(C) is supported by substantial evidence.  Listing 12.05 provides in relevant part:

---

[5] Plaintiff did raise this issue before the Appeals Council.  (R. at 296)  However, the Court is unpersuaded that this absolves him from failing to do so before the ALJ.  See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001)("The impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process.").

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; ***i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.**
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> **C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;**
> ....

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (Mental Retardation) (bold added).

As already noted, Plaintiff has the burden of proof of showing that the medical evidence concerning his impairments met the criteria of Section 12.05(C). See Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005)(noting plaintiff's burden at step three "to present evidence establishing [that] her impairments meet or equal listed impairments"); see also Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)("The applicant has the burden of production and proof at the first four steps of the process."). Thus, applying the above-quoted requirements, Plaintiff must show: 1) an onset of mental retardation before age 22; 2) a valid verbal, performance, or full scale I.Q. score of 60 through 70; and 3) a physical or mental impairment imposing an additional and significant work-related limitation of function.

See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff argues that the evidence supports a finding that he suffers from mental retardation which began before he was 22 because he was in special education and had only a ninth grade education. See Plaintiff's Mem. at 11. Plaintiff also argues that there is no evidence in the record to suggest a brain injury or other reason for a decline in his intellectual ability. See id. Plaintiff cites Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001), and Luckey v. U.S. Department of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1999), for the proposition that, absent evidence of a sudden trauma, there is a rebuttable presumption of a fairly constant I.Q. throughout a claimant's life. See Plaintiff's Mem. at 11. Thus, Plaintiff contends that there is reason to presume that Plaintiff's full scale I.Q. score of 69, which was obtained by James Curran, Ph.D. ("Dr. Curran"), in January of 2005, (R. at 273),[6] was constant since his developmental years, see Plaintiff's Mem. at 11.

The Court disagrees. To begin with, it appears that Plaintiff has never been diagnosed with mental retardation at any point in his life. Dr. Curran did not make that diagnosis despite Plaintiff's I.Q. test results which fell just within the mental retardation classification. (R. at 273, 275) It was also not made by Ana Maria Soto, M.D. ("Dr. Soto"), (R. at 166), by the two state agency reviewing experts, S. Fischer, Psy.D., (R. at 168), and Jane S. Marks, M.D., (R. at 197), or by Plaintiff's therapist, Stuart Gladstone, L.C.S.W. ("Mr. Gladstone"), (R. at 263-64, 266). The failure of Mr. Gladstone to make this diagnosis is particularly noteworthy because he treated Plaintiff

---

[6] Plaintiff received the following I.Q. scores on the test administered by James Curran, Ph.D. ("Dr. Curran"), in January of 2005: verbal I.Q. 70, performance I.Q. 73, and full scale I.Q. 69. (R. at 273)

on a regular basis over a long period of time.  From February 2003 to March of 2004, (R. at 235, 266), a thirteen month period, Mr. Gladstone provided individual therapy to Plaintiff on roughly a biweekly basis, (R. 212-38, 260-66).  Each therapy session was sixty minutes long.  (Id.)  As well as not containing a diagnosis of mental retardation, (R. at 263-64, 266), Mr. Gladstone's treatment notes are devoid of any suggestion that Plaintiff had this impairment.  (R. 212-38, 260-66)

While the Eighth Circuit has held that a formal diagnosis of mental retardation is not required to meet the requirements of section 12.05, see Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007); see also Maresh v. Barnhart, 438 F.3d 897, 889 (8th Cir. 2006)(disagreeing "with the Commissioner that the Listing's introductory paragraph requires a formal diagnosis of mental retardation"), the First Circuit has yet to address this question.  Other courts have noted that the absence of a diagnosis of mental retardation is a factor to be considered in determining whether an ALJ's finding that a claimant did not meet the requirements of § 12.05 is supported by substantial evidence. See Fischer v. Barnhart, 309 F.Supp.2d 1055, 1062-63 (N.D. Ill. 2004)(noting that "[t]he record in this case ... does not include any diagnosis of mental retardation at any point in plaintiff's life"); Thompson v. Apfel, No. Civ.A. 99-0123-P-G, 1999 WL 1565205, at *7-8 (S.D. Ala. Oct. 29, 1999)(finding ALJ's decision that claimant did not meet Listing 12.05(C) supported by substantial evidence where, inter alia, there was an "absence of a formal diagnosis of mental retardation").  In this Court's view, the lack of a formal diagnosis should not automatically preclude a plaintiff from meeting the requirements of the Listing.  However, it is a factor which may be considered, along with the other evidence, in deciding whether the plaintiff has satisfied his burden.

Relatedly, the Court notes that "'Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.'" Vaughn v. Astrue, 494 F.Supp.2d 1269, 1273 (N.D. Ala. 2007)(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 42). The presence of such "deficits in adaptive functioning" is the second requirement of the diagnostic description of Listing 12.05. See id. Thus, the failure of medical professionals who have evaluated and/or treated Plaintiff (or reviewed his medical records) to diagnose mental retardation at least suggests that they may not have believed that Plaintiff had "deficits in adaptive functioning" and therefore did not meet this requirement for the diagnosis. Certainly, in the case of Dr. Curran, who did not diagnose Plaintiff as mentally retarded despite I.Q. scores falling just within the range for that classification, this could explain his failure to make that diagnosis with regard to Plaintiff.

In any case, even if the absence of a formal diagnosis of mental retardation is completely disregarded by the Court, the ALJ's finding that Plaintiff did not satisfy Listing 12.05(C) is still supported by substantial evidence. Plaintiff claims the ALJ erred by substituting her opinion for that of Dr. Curran and concluding that the I.Q. scores were reflective of Plaintiff's language or lack of education. See Plaintiff's Mem. at 10 (quoting Nieves v. Sec'y of Health & Human Servs., 775 F.2d 12, 14 (1st Cir. 1985)(stating that discrediting of I.Q. scores was improper because: 1) Commissioner is not at liberty to substitute his own opinions of individual's health for uncontroverted medical evidence; 2) courts do not engage in further inquiry as to the I.Q. requirement of Listing 12.05(C) once they find that the claimant's I.Q. was below 70; and 3) Commissioner was

incorrect in reasoning that the I.Q. score, if accurate, would
have prohibited the claimant from ever working). The ALJ, in
addressing Plaintiff's intellectual functioning, wrote in part:

> Dr. Curran opined the claimant's functioning was
> moderately impaired. It is of note that the claimant
> reported no significant stress until his sister wanted to
> sell her house, which would leave him homeless. He
> attends church four times a week, does household chores
> and repairs, reads, drives, shops, does auto work, spends
> time with family and church members, travels to visit
> family, helps his mother, works part-time, and attends
> family functions including his daughter's wedding. While
> testing revealed a Full Scale IQ of 69, this is
> consistent with his school history and English as a
> second language and not mental retardation. It is
> significant that in treatment notes the claimant did not
> state his psychiatric symptoms precluded work but rather
> that he could potentially become stressed by working,
> which could lead to drugs. However, he has remained
> abstinent since 2001 and has worked part-time and
> performed activities of daily living. The claimant has
> no marked psychiatric impairment as evidenced by his
> activities and treatment notes.

(R. at 22)

To the extent that the ALJ may have rejected the validity of
the I.Q. scores obtained by Dr. Curran, the Court finds that such
error was harmless. Even accepting the validity of such scores,
Plaintiff is still unable to meet his burden of showing
significantly subaverage general intellectual functioning with
deficits in adaptive functioning initially manifesting before age
22. See § 12.05(C). While Dr. Curran deemed his test results
reliable and valid, (R. at 273), he did not relate his finding
that Plaintiff had a verbal I.Q. score of 70 and a full scale
I.Q. score of 69, (id.), to an earlier period in Plaintiff's life
and never opined that Plaintiff suffered from mental retardation
since childhood. This supports a finding that Plaintiff did not
have an onset of mental retardation before age 22. See House v.
Apfel, No. 98-0885-P-L, 2000 WL 1368012, at *9 (S.D. Ala. Sept.

12

6, 2000)(holding that record did not support finding of onset of mental retardation before age 22, despite verbal I.Q. score of 69 and full scale I.Q score of 70, where psychologist did not relate plaintiff's scores to earlier period or state that Plaintiff has suffered from mental retardation from childhood); see also Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)("[A] section 12.05(C) claimant must demonstrate that the retardation is a lifelong condition which manifested itself before age twenty-two.")(citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05).

Plaintiff was in regular education classes while living in Puerto Rico, and he was placed in special education classes only after moving to the United States when he was thirteen or fourteen years of age,[7] (R. at 271, 275, 311-312). Significantly, the reason for this placement was his difficulty with English, (id.), a fact to which the ALJ specifically alluded, (R. at 22). Thus, other than a relatively brief period during his teenage years when he was confronted with a language problem, Plaintiff was in regular education classes during his developmental years.

Plaintiff additionally argues that it should be presumed that his I.Q. scores were constant during his developmental years and that based on this presumption he satisfies the third requirement of Listing 12.05. See Plaintiff's Mem. at 11. He

---

[7] Plaintiff testified that he was "like 12," (R. at 312), when he came to the United States. However, the Court concludes that Plaintiff was more likely thirteen or fourteen based on other evidence in the record. He told Ana Maria Soto, M.D., and James Curran, Ph.D., that he came to the United States at age 13. (R. at 165, 275) Plaintiff testified that he was born in 1955, (R. at 308), and that he came to the United States in 1969, (R. at 311), which would make him approximately fourteen at the time of the move. Lastly, Plaintiff indicated that he was in special education during his "time in high school," (R. at 311), apparently meaning the ninth, (R. at 121, 311), and possibly part of the tenth, (R. at 341), grade.

13

asserts that there is nothing in the record which would indicate a reason for a decline in his intellectual ability.  <u>See</u> <u>id.</u>  In making this assertion, Plaintiff apparently overlooks his long history of alcohol and drug abuse.  In her consultative examination report, Dr. Soto noted:

> There is a history of alcohol abuse, which began at age 15, averaging a pint of whiskey in the morning.  Then, cocaine, up to 1g daily, apparently beginning in his 20s. Heroin began at age 36, up to 30 bags daily, usually snorting.  There was the use of marijuana between ages 16 and 19 and apparently all kinds of whatever pills he could take, primarily downers.  He attended several detoxification programs, but with no avail.  Eventually, on 12-08-01, he was jailed for possession.  He was released on 11-15-02 ....  He has not done any drugs since 12-01.

(R. at 164-65)

Given this history, a presumption that Plaintiff's Full Scale and Verbal I.Q. scores were constant throughout his developmental years seems dubious.  Application of the presumption in this case is especially questionable given that these scores of 69 and 70 fell just barely within the mental retardation classification.

The two cases upon which Plaintiff relies, <u>Hodges v. Barnhart</u>, 276 F.3d 1265 (11th Cir. 2001), and <u>Luckey v. U.S. Department of Health & Human Services</u>, 890 F.2d 666 (4th Cir. 1999), do not persuade the Court that the ALJ's finding (i.e., that Plaintiff's impairments do not meet the Listings, (R. at 18, 23)), was erroneous.  The cases "only hold that a finding of mental retardation is not precluded when an I.Q. test is not performed before age 22, rather than holding that manifestation of deficits in adaptive functioning before age 22 is firmly established by low IQ."  <u>Justice v. Barnhart</u>, 431 F.Supp.2d 617, 619 (W.D. Va. 2006).  Here evidence that Plaintiff initially manifested significantly subaverage general intellectual

14

functioning with deficits in adaptive functioning prior to age 22 is lacking.[8]

In short, the evidence does not support Plaintiff's contention that he had an onset of mental retardation prior to age 22.  Thus, he failed to satisfy his burden of showing that he met the criteria of Section 12.05(C).  Plaintiff's first claim of error is, therefore, rejected.

## II.  The ALJ's finding that Plaintiff was capable of unskilled, routine, and repetitive work is based on substantial evidence.

The ALJ found that Plaintiff retained the RFC to perform work at all exertional levels in a low stress environment, which the ALJ defined as unskilled work involving routine and repetitive tasks, dealing primarily with things rather than people in the context of a small group, with no more than ten people in his immediate vicinity, no production lines, and no reading requirements.  (R. at 22, 24, 342)  Plaintiff contends that this finding was not based on substantial evidence.  Plaintiff's Mem. at 11.  In particular, Plaintiff argues that "the ALJ ignored the opinion of the examining psychologist, Dr. Curran[,] with regard to the plaintiff's functional limitations particularly his opinion that the plaintiff would have a moderately severe limitation in the ability to respond appropriately to customary work pressures."  Id. at 11-12.  Thus, Plaintiff seems to claim that the ALJ erred in not considering how stress impacted his ability to work.[9]  See id. at 12.

---

[8] Emblematic of evidence to the contrary is the fact that Plaintiff owned his own automobile repair business from 1983 to 1986 with one of his brothers.  (R. at 273)

[9] The Court's comprehension of Plaintiff's memorandum is somewhat hindered by his failure to follow standard rules of citation.  He utilizes block quotations, but neglects to identify the source immediately after the quotation.  See, e.g., Plaintiff's Mem. at 9, 10, 12.  While in some instances the source appears in the text above the quote, the pinpoint citation for the quote is not provided, see,

If so, he is mistaken.

In framing his hypothetical to the VE, the ALJ took into consideration that Plaintiff feels stress if he is in an environment where workers are pressured to work fast. (R. at 234, 260)  Accordingly, the ALJ included the limitation that the work not involve any production lines where someone after him would be depending on the speed of his work. (R. at 342)  The ALJ also included the limitations that the work be unskilled, that it involve routine and repetitive tasks, and that it deal primarily with things rather than people in the context of a small group, with no more than ten people in Plaintiff's immediate vicinity.  These requirements took into consideration Plaintiff's fear of public speaking and his anxiety relative to being with large groups of people, (R. at 230, 263, 265, 274), as well as his limitations relative to: understanding and remembering detailed instructions, (R. at 182, 276); interacting appropriately with the general public, (R. at 183, 192); accepting instructions and responding appropriately to criticism from supervisors, (R. at 192, 276); and working in coordination with or proximity to others without being distracted by them, (R. at 191).  Thus, the ALJ identified the conditions that were likely to cause Plaintiff stress and crafted his hypothetical to avoid or minimize those conditions.  Cf. Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284, 287 (1st Cir. 1986) (Campbell, C.J., concurring)(noting that ALJ failed to identify the conditions that were likely to cause disabling stress in plaintiff and, therefore, failed to elicit from the VE any testimony directed specifically to these particular stress-causing conditions).  The Court finds no error in the ALJ's

_____

e.g., id. at 9, 10, and in one instance the citation given is incorrect, see id. at 9.  More confusingly, a portion of his argument appears as a block quotation, but as far as the Court can determine, Plaintiff is not quoting anything.  See id. at 12.

compliance with either Social Security Ruling ("SSR") 85-15 or
Lancellotta.  See Plaintiff's Mem. at 12 (citing SSR 85-15 and
Lancellotta).

    Plaintiff appears to argue that because Dr. Curran found
that Plaintiff had a moderately severe impairment in the ability
to respond to customary work pressures the ALJ was obligated to
accept this finding and include it in the hypothetical which she
posed to the VE.  See Plaintiff's Mem. at 12.  If so, Plaintiff
is mistaken.  Because Dr. Curran performed a consultative
examination at the Commissioner's request, any opinion that
resulted from that examination was not entitled to controlling
weight because he was a consultative examiner, rather than a
treating physician.  See McSwain v. Bowen, 814 F.2d 617, 619
(11th Cir. 1987)(stating that opinions by one-time examiners were
not entitled to deference because they were not treating
physicians).  SSR 96-2p provides that in order to be given
controlling weight a medical "opinion must come from a 'treating
source,' as defined in 20 CFR [§§] 404.1502 and 416.902.
Although opinions from other acceptable medical sources may be
entitled to great weight, and may even be entitled to more weight
than a treating source's opinion in appropriate circumstances,
opinions from sources other than treating sources can never be
entitled to 'controlling weight.'"  SSR 96-2p, 1996 WL 374188, at
*2.  The ALJ was bound to follow SSR 96-2p.  See McDonald v.
Sec'y of Health & Human Servs., 795 F.2d 1118, 1125 (1st Cir.
1986)("Social Security Rulings are binding on all Social Security
Administration personnel, including state agency adjudicators,
administrative law judges, and the Appeals Council."); see also
Rose v. Shalala, 34 F.3d 13, 17 n.2 (1st Cir. 1994)(citing
McDonald).

    Additionally, it is the ALJ's responsibility to resolve
conflicts in the evidence, see Irlanda Ortiz v. Sec'y of Health &

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("[T]he resolution
of conflicts in the evidence is for the [Commissioner], not the
courts."); Evangelista v. Sec'y of Health & Human Servs., 826
F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are,
assuredly, for the [Commissioner]--rather than the courts--to
resolve.").  Here, the ALJ resolved that conflict in favor of
other, more probative evidence in the record.  The ALJ noted that
Plaintiff reported no significant stress until his sister wanted
to sell her house which would leave him homeless.  (R. at 22)
The ALJ also noted that Plaintiff "did not state his psychiatric
symptoms precluded work but rather that he could potentially
become stressed by working, which could lead to drugs."  (Id.);
see also (R. at 225-26).  She recounted Dr. Curran's findings in
detail, and they did not suggest that Plaintiff was precluded by
his impairment from all work.

> [T]he claimant cited moderate depression, anxiety in
> groups, occasional tearfulness, a lack of motivation,
> easy fatigue and agitation, and auditory hallucinations;
> however, [Dr. Curran] opined these were not voices but
> part of the Pentecostal faith wherein there was good and
> evil and you should listen to the good side.  The
> claimant drove, attended church four times a week,
> socialized with family, repaired things, did household
> chores, and slept fairly well.  He was talkative, alert,
> and cooperative, with good motor coordination, good
> hygiene, focused eye contact, and he had fair rapport,
> judgment, and insight.  Testing revealed a Verbal IQ of
> 70, a Performance IQ of 73, and a Full Scale IQ of 69
> with high school reading, fifth grade spelling, and
> fourth grade arithmetic, which was consistent with the
> claimant's school history.  Dr. Curran diagnosed
> polysubstance and alcohol abuse in remission; social
> phobia; depressive disorder, NOS; and a GAF of 55.[10]  He

_____

[10] The Global Assessment of Functioning ("GAF") "is a subjective
determination based on a scale of 100 to 1 of 'the clinician's
judgment of the individual's overall level of functioning.'"  Langley
v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004)(quoting
Diagnostic and Statistical Manual of Mental Disorders (Text Revision

opined the claimant could follow simple instructions with English as his second language, could get along with peers fairly well, and could exhibit some persistence in the workplace.   A supplemental questionnaire noted generally moderately impaired functioning.[11]

(R. at 20)  The ALJ also noted that Plaintiff performed auto work and worked part-time.  (R. at 22)

Thus, there was evidence in the record based on which the ALJ could reasonably discount or reject Dr. Curran's assessment that Plaintiff was moderately severely impaired in responding appropriately to customary work pressures.[12]  The ALJ was therefore, not required to include this degree of limitation in the hypothetical which she posed to the VE or in her determination of Plaintiff's RFC.

Lastly, Plaintiff's counsel had the chance to cross-examine the VE after the ALJ had posed his hypothetical.  If Plaintiff's

---

4th ed. 2000) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM-IV-TR at 34.

[11] It was in this supplemental questionnaire that Dr. Curran rated Plaintiff's impairment in responding to customary work pressures as moderately severe.  (R. at 276)  It is worth noting that the other impairment ratings were all assessed by Dr. Curran as being either "Moderate" or "Mild."  (Id.)  Thus, the ALJ's statement that "Dr. Curran opined the claimant's functioning was moderately impaired, (R. at 22), was a fair summary of Dr. Curran's opinion.

[12] On October 23, 2003, Plaintiff reported that he was "just fine — planning to return to work - full-time — wants to be a school bus driver."  (R. at 214)  On December 4, 2003, Mr. Gladstone noted that Plaintiff "presented as relaxed, happy — he said he felt great.  He expressed pleasure talking about his girlfriend.  He said he wants to get a job driving a van or bus for special needs children and said he's been doing some local, part-time auto work ...."  (R. at 212) The March 2004 discharge summary at the end of his therapy with Mr. Gladstone reflects that Plaintiff was better able to handle stress, had improved self-esteem, and had a GAF of 70.  (R. at 266) Additionally, Dr. Curran's own statement that "[a]s for his ability to work, he can follow simple instructions," (R. at 275), is consistent with the ALJ's finding that Plaintiff can perform unskilled work, (R. at 22).

counsel believed that the ALJ had omitted a critical limitation
from her hypothetical, he gave no indication at the time.  (R. at
344)[13]  The Court views unfavorably claims of error which,
perhaps, could have been addressed or cured by the ALJ if raised
at the hearing.  See Mills v. Apfel, 244 F.3d at 8 (observing
that if the ALJ had heard the objection now made and agreed with
it, he could have addressed it); see also Branum v. Barnhart, 385
F.3d 1268, 1271 (10th Cir. 2004)("[T]he ALJ should ordinarily be
entitled to rely on the claimant's counsel to structure and
present claimant's case in a way that the claimant's claims are
adequately explored, and the ALJ may ordinarily require counsel
to identify the issue or issues requiring further development.")
(internal quotation marks omitted).  Accordingly, Plaintiff's
second claim of error is rejected.

### Summary

     For the reasons stated above, I find that Plaintiff waived
his argument that Plaintiff met the requirements of Listing
12.05(C) because he did not make this claim at the hearing before
the ALJ.  Even if the Court were to overlook this waiver,
Plaintiff failed to satisfy his burden of establishing the onset
of mental retardation prior to age 22.  The ALJ's determination
of Plaintiff's RFC is supported by substantial evidence.
Regarding the latter determination, the ALJ was not required to
accept the limitation indicated by Dr. Curran, an examining and
not a treating source, that Plaintiff had a moderately severe
limitation in his ability to respond to customary work pressures

---

     [13] The brief dialogue between the ALJ and Plaintiff's attorney is
as follows.

     ALJ:  Mr. Gannon, any questions for Mr. Sabella?

     ATTY:  No, Your Honor.

(R. at 344)

when this limitation was inconsistent with other evidence in the
record.

## Conclusion

The Court finds that the Commissioner's decision that
Plaintiff is not disabled is supported by substantial evidence in
the record and is free from legal error.  Accordingly, I order
that Defendant's Motion to Affirm be granted and that Plaintiff's
Motion for Summary Judgment be denied.

So ordered.


ENTER:


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
February 5, 2008